Stephanie **JONES**, M.D., Raul Martinez, M.D., and Consultants in Pain Medicine, P.A., Appellants,

v.

Debra **KING**, Appellee.

No. 04-07-00341-CV.

Court of Appeals of Texas, San Antonio.

Jan. 23, 2008.

Rehearing Overruled Feb. 20, 2008.

---

George G. Brin, James W. Veale, Jr., Brin & Brin, P.C., San Antonio, TX, for Appellants.

Jason Speights, Speights Law Firm, L.L.P., Jon T. Powell, The Powell Law Firm, San Antonio, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, STEVEN C. HILBIG, Justice.

## MEMORANDUM OPINION

Opinion by STEVEN C. HILBIG, Justice.

In this interlocutory appeal appellants, Stephanie Jones, M.D., Raul Martinez, M.D., and Consultants in Pain Medicine, P.A., contend the trial court abused its discretion when it denied their motion to dismiss filed pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon Supp.2007) (authorizing appeal from interlocutory order denying section 74.351(b) motion to dismiss). We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

King sought treatment for chronic pain from anesthesiologist Stephanie Jones, who practices with Raul Martinez and other doctors in the medical group Consultants in Pain Medicine, P.A. After attempts to control King's pain through various procedures and medications, Jones allegedly recommended the implantation of an intrathecal morphine pump. King claims she developed meningitis, diabetes insipidus, and other health problems as a result of complications from the surgical implantation and subsequent treatment. She brought a medical malpractice action against appellants.

Because King brought a health care liability claim, she was required to comply with the mandates of Chapter 74 of the Texas Civil Practice and Remedies Code. Section 74.351(a) of the Code requires a health care liability claimant to "not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." *Id.* King served Jones and Martinez with a report and curriculum vitae of Gregory Powell, M.D. Appellants filed a motion to dismiss contesting Powell's qualifications and the adequacy of his report. *See id.* § 74.351(*l*), (r)(6). King filed a response and, alternatively, a motion to extend time to allow her to file an amended report to cure any deficiencies.

The trial court found Powell's report "deficient." However, the court granted King an extension of time to cure the deficiencies in Powell's report. King subsequently served appellants with an amended report authored by Powell. Appellants filed a second motion to dismiss in which they again challenged Powell's qualifications and the adequacy of his report. The trial court denied the motion and appellants perfected this appeal.

### ISSUE ON APPEAL

Appellants raise a single issue on appeal claiming the trial court abused its discretion in denying their motion to dismiss. Within this broad issue appellants argue, among other things, that Powell's report does not adequately address the causal connection between the alleged breaches of the standards of care and King's purported injuries. Because we hold the report does not adequately address causation, we need not address appellants' other arguments.

### STANDARD OF REVIEW AND SUBSTANTIVE LAW

#### Standard of Review

Appellate courts review a trial court's decision under section 74.351 to grant or deny a motion to dismiss a case for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). An abuse of discretion occurs when the trial court acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Univ. of Tex. Health Science*

*Ctr. at San Antonio v. Ripley,* 230 S.W.3d 419, 421 (Tex.App.-San Antonio 2007, no pet.).

### Substantive Law

An "expert report" under Chapter 74 must provide a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, breaches of those standards, and the causal relationship between the breaches and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2007). A motion to dismiss under section 74.351 is properly granted "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report." *Id.* In determining whether the report constitutes a "good faith effort," we look only within the four corners of the report. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). The "good faith effort" standard is met if the report provides enough information to fulfill two purposes: (1) inform the defendant of the specific conduct called into question, and (2) provide a basis for the trial court to conclude the plaintiff's claims have merit. *Bowie Mem'l Hosp.,* 79 S.W.3d at 52. The report is not required to marshal all of the plaintiff's proof, but it must include the expert's opinions on each of the elements identified in section 74.351(r)(6). *Id.* While the report need not present evidence as if the plaintiff were actually litigating the merits of the case, it must do more than merely state the expert's conclusion on each of the required elements. *Id.* It is not enough that the expert report "provided insight" about the plaintiff's claims; "rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Id.* (quoting *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999)). The report must explain how the alleged breach

of the standard of care caused the injuries alleged. *Bowie Mem'l Hosp.,* 79 S.W.3d at 53.

### ANALYSIS

Powell's report contains little more than a series of repetitious conclusory statements that (1) the morphine pump should never have been placed and its placement proximately caused all of the injuries and damages alleged by King, (2) the failure to timely detect the meningitis and treat it for more than forty-eight hours caused it to become worse and resulted in numerous additional complications and injuries including decreased vision, diabetes insipidus, and pain, and (3) the failure to turn off the morphine pump when the catheter was removed caused diabetes insipidus.

With regard to the first two series of statements, while clearly criticizing the decision to implant the pump and the delay in diagnosis and treatment of meningitis, the report wholly fails to explain how these alleged breaches caused the injuries alleged, thus rendering the report inadequate. *See id.* Accordingly the report does not meet the standards set forth above with regard to required element of causation.

While agreeing with the conclusion that Powell's report does not provide sufficient information as to causation of the diabetes insipidus, the dissent argues the report is adequate to support a medical negligence claim because it provides sufficient information as to how the delay in diagnosing the meningitis for forty-eight hours caused the disease to "worsen" and caused "additional pain and suffering." The dissent quotes several paragraphs of the report to support its conclusion. However, a close reading of the relevant portions of the report confirms Powell's failure to link any

delay in diagnosis to any additional pain and suffering or exacerbation of the meningitis than what would have occurred in the face of an earlier diagnosis.

Stated another way, while it may be facially appealing to infer additional pain and suffering resulted from the alleged delay in diagnosis, the trial court is not permitted to rely on such speculation in determining the adequacy of the report. While Powell clearly states King suffered "extra" or "additional" pain and suffering due to the 48–hour delay in diagnosis, he fails to provide any baseline from which the trial court could conclude the delay **caused** the results. Powell does not explain what facts led him to his conclusions. His report does not indicate the normal or expected course of meningitis once treatment has begun. Does meningitis become more difficult to treat or take longer to resolve if treatment is delayed? Does the disease become more virulent due to lack of treatment? While Powell also states King was "hospitalized twice," "lost over thirty days at work," and "incurred a substantial amount of medical bills during the hospitalizations," he does not attempt to explain how these results would not have occurred if the diagnosis of meningitis had occurred 48 hours earlier. "[T]he expert must explain the basis of his statements to link the conclusions to the facts." *Bowie Mem'l Hosp.*, 79 S.W.3d at 52.

■ As this court recognized in *Hutchinson v. Montemayor*, a report must set forth facts or explain the medical basis for the expert's opinion to satisfy the statutory mandates with regard to the element of causation. 144 S.W.3d 614, 617 (Tex.App.-San Antonio 2004, no pet.). Similarly, in *Costello v. Christus Santa Rosa Health Care Corp.*, we agreed with the trial court that a report was inadequate as to causation when it failed to explain how the breach caused the injury alleged, noting

that inferences were not permitted. 141 S.W.3d 245, 249 (Tex.App.-San Antonio 2004, no pet.). Here, Powell offered no medical explanation about whether earlier treatment would have been effective in shortening the duration of the meningitis, precluding additional pain and suffering, or preventing other alleged injuries and damages. *See id.*

As for the failure to turn off the pump when the catheter was removed, Powell opines this allowed morphine to continue to flow into King, which caused the hypothalamus "to go to sleep," causing diabetes insipidus. To explain causation, Powell relies heavily on the opinion and apparent documentation of a nephrologist, John Reineck, M.D., who was apparently consulted by King with regard to diabetes insipidus. Powell states "as documented by Reineck," the negligence in failing to turn off the pump caused the diabetes insipidus. However, Powell's report does not include any information on Reineck's qualifications nor is there any documentation from Reineck attached to the report. Given that the report's adequacy must be judged solely by its four corners, the reliance on Reineck's alleged, but absent, documentation, cannot cure the deficiencies in Powell's report. Moreover, even if Powell had not relied on Reineck, his opinion would still be conclusory. In one paragraph of his report Powell states:

> As set forth above, this causal connection between the morphine pump not being turned off, the morphine therefore being pumped into the body, the hypothalamus essentially going to sleep due to the morphine, and the resulting diabetes insipidus in Ms. King is all, within my training, knowledge and experience and based upon reasonable medical probability, an accurate description of how the morphine caused the diabetes insipidus in Ms. King.

While he states that the failure to turn off the pump allowed continued morphine flow, which caused the hypothalamus "to go to sleep," resulting in diabetes insipidus, Powell does not explain how the continued morphine flow caused the hypothalamus "to go to sleep" or how a "sleeping" hypothalamus causes diabetes insipidus. Powell did not provide a basis for the trial court to conclude King's claims have merit. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52.

## CONCLUSION

Powell's report does not link his bare conclusions to the facts and thus fails to explain how the alleged breaches caused the injuries and damages alleged by King. The report did not provide the trial court with sufficient information to determine King's claims have merit. Accordingly, we conclude his report does not satisfy section 74.351 on the issue of causation. We sustain appellants' issue with regard to the inadequacy of King's expert report on the element of causation, reverse the trial court's order denying appellants' motion to dismiss, and remand this matter to the trial court with instructions to award to appellants any reasonable attorney's fees and costs of court they incurred and to dismiss with prejudice King's claims against appellants. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b) (Vernon Supp. 2007).

## DISSENTING OPINION

Dissenting opinion by ALMA L. LÓPEZ, Chief Justice.

Because Powell relied on Dr. Reineck to provide the causal connection between Martinez's breach of the standard of care and the development of the diabetes insipidus, I agree that the report failed to satisfy section 74.351 on the issue of causation as to Martinez. Powell's discussion of the injuries sustained by King as a result of Jones's negligence, however, is not limited to the development of the diabetes insipidus. Because I believe the trial court did not abuse its discretion in concluding that Powell's report explained how the alleged breach of the standard of care by Jones caused injury to King, I respectfully dissent.

Powell clearly stated that Jones breached the applicable standard of care by failing to recognize and diagnose King's symptoms of meningitis between the period from Thursday, August 12 until Saturday, August 14. Powell states, "This over 48–hour delay caused the meningitis to worsen substantially and caused increased pain and suffering for Ms. King." Powell further explains:

Dr. Jones failed to direct Ms. King to the Emergency Room on August 11 and 12, 2004. Dr. Jones's office was called five times on August 12, 2004 regarding the serious medical problems that Ms. King was experiencing. Dr. Jones repeatedly instructed Ms. King NOT to go to the E.R., as the doctors at the hospital would not know what to do. Dr. Jones should have sent Ms. King, in her medical condition at that time, to the E.R. This would have resulted in an earlier diagnosis and treatment of the meningitis and the additional complications related to the placement of the morphine pump. Ms. King incurred additional pain and suffering prior to going to the E.R. which could have been avoided had Dr. Jones advised Ms. King to go to the E.R. immediately.

✻ ✻ ✻ ✻ ✻ ✻

Dr. Jones failed to follow-through on the promise Dr. Jones made on the night of August 12, 2007 to the E.R. doctor at Methodist Hospital, Dr. Deuson, that Dr. Jones would perform a spinal tap on Ms. King the next morning, August 13,

2004. Had Dr. Jones performed the spinal tap as promised, the meningitis would have been diagnosed on at least August 13, 2004. The delay in the diagnosis of the meningitis allowed it to worsen and this proximately caused Ms. King to incur a great deal of extra pain and suffering, she was hospitalized twice, she lost over 30 days at work, and she incurred a substantial amount of medical bills during the hospitalizations.

\* \* \* \* \* \*

*Dr. Jones failed to perform an L.P. and obtain C.S.F. for culture/analysis at the same time as performing the blood patch on Ms. King on August 13, 2004....* This failure to perform the L.P. and to obtain the C.S.F. and order the test for meningitis caused an over 48–hour delay in the diagnosis of the meningitis and the associated delay in treatment of the meningitis which allowed it to worsen.... Dr. Deuson had specifically suspected meningitis the night before on August 12, 2004. Rather than do the prudent thing and test for meningitis as she had promised to do, Dr. Jones, to protect her pride and reputation, placed the health and well-being of Ms. King at substantial and unnecessary risk. The ultimate result of Dr. Jones's failure to uphold her promise and do the prudent thing and take the spinal tap was a further delay in the diagnosis and treatment of the meningitis in Ms. King which proximately caused her to incur pain and suffering, loss of work, and a substantial amount of medical bills.

Based on the foregoing, I believe the trial court did not abuse its discretion in concluding that Powell's report fairly summarized the causal link between Jones's breach of the standard of care and injury to King. Accordingly, I believe the trial court properly denied the motion to dismiss as to the medical negligence claim against Jones. *See Silvas v. Ghiatas,* 954 S.W.2d 50, 54 (Tex.App.-San Antonio 1997, pet. denied) (noting allegations specifying numerous means in which defendant was negligent comprise one medical negligence cause of action). Because the majority holds to the contrary, I respectfully dissent.