Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-09-00363-CV


____________________



JUAN MANUEL GONZALEZ, Appellant



V.



PAUL SEBILE, SR., INDIVIDUALLY AND AS HEIR AND REPRESENTATIVE


OF THE ESTATE OF LAURA SEBILE, PAUL SEBILE, JR.,


LAWRENCE C. SEBILE, ERIC SEBILE, DON C. SEBILE, CLARA J. SEMIEN,


FRANKIE L. COBB AND SHARON K. DEAN, Appellees 


 




On Appeal from the 60th District Court


Jefferson County, Texas


Trial Cause No. B-182,575






MEMORANDUM OPINION



 Appellees Paul Sebile, Sr., individually and as heir and representative of the estate of
Laura Sebile, deceased; Paul Sebile, Jr., Lawrence C. Sebile, Eric Sebile, Don C. Sebile,
Clara J. Semien, Frankie L. Cobb and Sharon K. Dean, as children of the deceased, brought
a healthcare liability claim against appellant Juan Manuel Gonzalez, M.D. and other
defendants. Gonzalez appeals the denial of his motion challenging the expert reports. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp. 2009). We reverse and
render.

Background


 In their petition, appellees alleged that after Laura Sebile went to Baptist Hospital on
October 22, 2006, complaining of shortness of breath and pain, chest x-rays suggested
congestive heart failure, and Sebile was referred to a surgeon, Dr. Gordon, and booked for
a thoracoscopy to biopsy her lymph nodes. Appellees contended that the physicians failed
to eliminate congestive heart failure as the cause of Sebile's symptoms and, despite the fact
that Sebile had previously had open heart surgery, did not call for a cardiology consult to
clear Sebile for surgery. According to appellees, Gordon placed Sebile under general
anesthesia "without a single medical consultation[,]" and the anesthesiologist, Gonzalez,
"failed to read the history and physical which revealed [Sebile] as not fit for surgery." 
Appellees contended that during the procedure, Gordon punctured Sebile's heart with an
instrument, which resulted in massive bleeding, and Sebile developed multiorgan failure and
died thirteen days later. Appellees asserted numerous ways in which Gonzalez allegedly fell
below the standard of care in his treatment of Sebile, including "[b]y failing to note [Sebile]
was at very high risk for surgery and general anesthesia[.]" Appellees also asserted that
Gonzalez should have consulted with a cardiologist to clear Sebile for surgery, and that
Gonzalez breached his duty to properly oversee the care provided by Baptist's nursing staff.

 Appellees attached to their petition the expert report of Dr. Shabir Bhimji, a board-certified cardiothoracic and vascular surgeon. Gonzalez filed a motion to dismiss, in which
he contended that the expert report by Bhimji was insufficient. Appellees also later provided
a report by Dr. Hector Herrera, an anesthesiologist. Gonzalez also objected to the sufficiency
of Herrera's report and filed another motion to dismiss. The trial court found the reports
deficient and gave appellees thirty days in which to file amended reports. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(c) (Vernon Supp. 2009). Appellees subsequently filed
an amended report by Bhimji, but did not provide an amended report from Herrera. 
Gonzalez again moved to dismiss appellees' claims. After conducting a hearing, the trial
court denied Gonzalez's motion to dismiss. Gonzalez then filed this accelerated interlocutory
appeal. See id.

Gonzalez's Issue


 In his sole appellate issue, Gonzalez contends that the trial court erred by refusing to
dismiss appellees' claims "for failure to produce an expert report that provided a fair
summary [of] the standard of care germane to Dr. Gonzalez, how he breached said standard,
and how that breach allegedly caused Mrs. Sebile's death[.]"

Standard of Review and Pertinent Law


 We review a trial court's decision regarding the adequacy of an expert report under
an abuse of discretion standard. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 877 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles." Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court also abuses its discretion if it
fails to analyze or apply the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992).

 A plaintiff who asserts a healthcare liability claim must provide each defendant
physician and healthcare provider with an expert report no later than the 120th day after
filing suit. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2009). The
statute defines "expert report" as

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.


Id. § 74.351(r)(6). If a plaintiff furnishes the required report within the time permitted, the
defendant may file a motion challenging the report. Id. § 74.351(l).

 The statute provides that the trial court "shall grant a motion challenging the adequacy 
of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)." Id. When determining whether the report represents a good-faith effort,
the trial court's inquiry is limited to the four corners of the report. Wright, 79 S.W.3d at 53;
Palacios, 46 S.W.3d at 878; Eichelberger v. Mulvehill, 198 S.W.3d 487, 490-91 (Tex. App.--Dallas 2006, pet. denied). To constitute a good-faith effort, the report "must discuss the
standard of care, breach, and causation with sufficient specificity to inform the defendant of
the conduct the plaintiff has called into question and to provide a basis for the trial court to
conclude that the claims have merit." Palacios, 46 S.W.3d at 875. The expert report must
set forth the applicable standard of care and explain the causal relationship between the
defendant's acts and the injury. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6)
(A claimant must provide each defendant with an expert report that sets forth the manner in
which the care rendered failed to meet the standards of care and the causal relationship
between that failure and the injuries claimed.); Doades v. Syed, 94 S.W.3d 664, 671-72 (Tex.
App.--San Antonio 2002, no pet.); Rittmer v. Garza, 65 S.W.3d 718, 722-23 (Tex. App.--Houston [14th Dist.] 2001, no pet.). Although an expert report need not marshal and present
all of the plaintiff's proof, a report that omits any of the elements required by the statute does
not constitute a good-faith effort. Palacios, 46 S.W.3d at 878-79.

Application of the Law to the Facts


 With respect to Gonzalez, Bhimji's report states as follows, in pertinent part:

 In brief, the cause of death of Laura Sebile was due to . . . [the] gross
negligence of the anesthesiologist, Dr. Gonzalez . . . . 


 . . . .


 Based on the review of Laura Sebile's medical records from Memorial
Hermann Baptist Hospital, it is my professional opinion that the surgeon, and
the Anesthesiologist (Dr[.] Gonzalez) at [the] facility have failed to adhere to
the barest minimum of standards of medical practice in their management of
the patient.


 . . . .


 It is my opinion that "in all reasonable medical probability" the below standard
of care actions [sic] and/or omissions of both the surgeon, Dr. Fallon Gordon
and Dr[.] Gonzalez caused the injuries suffered by Laura Sebile as well as her
death[.] (use of all caps in original omitted).


 . . . .


 [l.] According to the Texas Administrative Standards of Physician Practice
is it not reasonable to ask the anesthesiologist to evaluate the patient for
surgery, especially one who is at very high risk for surgery? [T]he
anesthesiologist in this case is just as culpable of gross negligence for putting
this patient under general anesthesia without appropriate cardiac workup[.]


 [m.] According to the Texas Administrative Standards of Physician Practice
prior to any surgery, is it not reasonable for both physicians and nurses to
check blood work for a patient going to surgery? This is not some obscure
fancy or exotic blood work up but a standard laboratory test used by millions
everyday in the USA. It is vital that all surgeons and anesthesiologists check
blood work prior to surgery. This patient had [the first set of INR obtained at
13:25 p[.]m[.] reveals that the patient had twice the normal INR.] (emphasis
deleted).


 . . . .


 It is shocking to see that the anesthesiologist took such an ill patient to the
[o]perating room without checking the most basic blood work. The INR (a
profile of the ability of the blood to clot) was abnormal. First of all, it is
unheard of that a patient with such [a] complex medical disorder would be
rushed to the OR without a set of proper blood work. Moreover, this blood
work must be checked. Laura Sebile's coagulation profile was so high that no
reasonable doctor would ever take her to the [o]perating room. Even in dire
emergency cases, such cases are turned down because the patient can bleed to
death. The responsibility for checking the blood work is on both the surgeon
and the anesthesiologist. It is shocking that this patient was even allowed to
come to the [o]perating room, with such abnormal blood coagulation
parameters. . . . [I]t is the absolute responsibility of Dr[.] Gonzalez to check
these numbers before allowing the surgeon to operate. (emphasis in original
deleted).


 . . . [I]t is vital that all patients who are at high risk for surgery get proper work
up and are cleared for surgery. Anesthesiologists grade patients based on their
medical illness. The higher the grade, the more the risk of surgery. Laura
Sebile ha[d] bypass surgery 20 years ago, she was being worked up for a
hypothetical cancer, she was obese, had multiple medical problems and yet
D[r.] Gonzalez agreed to put this patient to sleep. There is a vast amount of
literature that says patients need to be worked up if they have any type of
serious medical disorder and the anesthesiologist must demand this work up. 
Dr[.] Gonzalez failed in this most basic duty to ask for a proper work up before
putting the patient to sleep. (emphasis in original deleted).


 The patient had already had prior . . . surgery and was now going for another
thoracic procedure. There is no procedure in thoracic surgery that is
considered safe, especially when the patient has already had one prior thoracic
procedure. So one would think that the surgeon and anesthesiologist would
make sure that the patient would have blood ready just in case there was a
problem. Apparently, Dr[.] Gonzalez, like Dr[.] Fallon, seems to have been
grossly negligent. It is shocking that an anesthesiologist would put a patient
to sleep and not have any blood on stand by in case it was needed. Laura
Sebile had no blood ready when she had a complication in the OR. (emphasis
in original deleted).


 . . . Dr[.] Gonzalez has performed way beyond [sic] the accepted standard of
care. Any reasonable anesthesiologist would have check[ed] blood work prior
to putting the patient to sleep, any reasonable anesthesiologist would have
demanded that the surgeon properly work up the patient prior to any elective
surgery[,] and any reasonable anesthesiologist would have made sure that the
patient has blood available in case there was a complication. Dr[.]
Gonzalez['s] performance is shocking and . . . falls well beyond accepted
standards of care for patients not only in Texas but also anywhere in the world. 
(emphasis in original deleted).

 None of Bhimji's statements explain how, if Gonzalez had ordered a cardiac consult, 
Sebile's death would have been prevented. See Jones v. King, 255 S.W.3d 156, 159 (Tex.
App.--San Antonio 2008, pet. denied). Moreover, the purported causal link Bhimji attempts
to establish in his report (i.e., that Sebile would not have been injured if Gonzalez had not
cleared her for surgery) is too attenuated to set forth evidence of causation with sufficient
specificity to inform Gonzalez of the conduct that appellees have called into question, and
to provide a basis for the trial court to conclude that appellees' claims have merit. See
Palacios, 46 S.W.3d at 875; see also IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v.
Mason, 143 S.W.3d 794, 800 (Tex. 2004). In addition, Herrera's report contains only a
conclusory statement about causation; that is, his report does not link his conclusion to the
facts and does not explain how Gonzalez's alleged negligence contributed to Sebile's death.

 We sustain Gonzalez's issue. Accordingly, we reverse the trial court's order denying
Gonzalez's motion to dismiss and remand the case to the trial court for entry of a judgment
dismissing appellees' claims against Gonzalez with prejudice and to award Gonzalez
reasonable attorney's fees and court costs. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(b) (Vernon Supp. 2009).

 REVERSED AND REMANDED.


 STEVE McKEITHEN

 Chief Justice

Submitted on October 22, 2009

Opinion Delivered December 10, 2009

Before McKeithen, C.J., Gaultney and Kreger, JJ.