COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





TENET HOSPITALS LIMITED, A
TEXAS LIMITED PARTNERSHIP
D/B/A PROVIDENCE MEMORIAL
HOSPITAL,

                            Appellant,
v.

RICHARD BARNES, JAMES BARNES,
KATHLEEN HALE, KIMBERLEY
VANDAGRIFF, AND 
KAREN CASTILLO, INDIVIDUALLY
AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF EARLINE W. BARNES, DECEASED,

                            Appellees.

§
 
§
 
§
 
§
 
§
 
 § 

 §

 §

 §





No. 08-09-00093-CV

Appeal from
 
 County Court at Law No. 5

of El Paso County, Texas 

(TC # 2007-4558) 




O P I N I O N

            This appeal stems from a health care liability claim against Tenet Hospitals Limited, a Texas
Limited Partnership d/b/a Providence Memorial Hospital (Providence). Providence moved to
dismiss the lawsuit based on the plaintiffs’ failure to timely serve an expert report authored by a
qualified expert in compliance with Chapter 74 of the Texas Civil Practice and Remedies Code. The
trial court denied the motion. For the reasons that follow, we affirm.
FACTUAL BACKGROUND
            The health care liability claim was brought by Richard Barnes, James Barnes, Kathleen Hale,
Kimberley Vandagriff, and Karen Castillo, individually and as personal representative of the Estate
of Earline W. Barnes (Appellees) for injuries allegedly sustained by Barnes and her subsequent
death. Appellees claim that Barnes, a 79-year-old woman with congestive heart failure who had
been admitted to Providence, suffered from complications of shock and died on October 31, 2005
because of the hospital’s negligence.
            Appellees filed suit on October 12, 2007 and their time in which to file expert reports expired
on February 9, 2008. In an effort to comply with Chapter 74, Appellees submitted three reports and
curriculum vitae from: (1) Michael P. Koumjian, M.D., (2) Juan U. Contin, M.D., and (3) Angelica
Tyler, R.N. Providence objected to the reports, alleging that the authors are not qualified to render
expert opinions against Providence and that their reports are inadequate. Providence also argued that
Dr. Contin’s report is not an expert report at all. No additional or supplemental expert reports were
served.
STANDARD OF REVIEW
            We review a trial court’s decision on a motion to dismiss under Section 74.351 for an abuse
of discretion. See American Transitional Care Centers of Texas, Inc. v. Palacios, 46 S.W.3d 873,
875 (Tex. 2001). An abuse of discretion occurs when the trial court acts in an unreasonable or
arbitrary manner without reference to any guiding rules or principles. Walker v. Gutierrez, 111
S.W.3d 56, 62 (Tex. 2003). A trial court will be deemed to have acted arbitrarily and unreasonably
if the trial court could have reached only one decision, yet reached a different one. See Teixeira v.
Hall, 107 S.W.3d 805, 807 (Tex.App.--Texarkana 2003, no pet.). To that end, a trial court abuses
its discretion when it fails to analyze or apply the law correctly. In re Southwestern Bell Telephone
Co., L.P., 226 S.W.3d 400, 403 (Tex. 2007), citing In re Kuntz, 124 S.W.3d 179, 181 (Tex. 2003). 
An abuse of discretion does not occur merely because the appellate court may have decided a
discretionary matter in a different way than the trial court. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985). However, to the extent resolution of the issues presented
requires interpretation of the statute, we review the ruling de novo. See Buck v. Blum, 130 S.W.3d
285, 290 (Tex.App.--Houston [14th Dist.] 2004, no pet.).
EXPERT REPORTS
            In Points of Error One and Two, Providence complains that the reports of Dr. Contin and Dr.
Koumjian fail to meet the statutory requirements of Section 74.351. 
Can the Expert Reports be Considered Together?
            Providence attacks the sufficiency of both Dr. Contin’s autopsy report and Dr. Koumjian’s
expert report. It raises numerous arguments addressing why an autopsy report does not qualify as
an expert report. It also challenges Dr. Koumjian’s report as wholly inadequate because it does not
represent an objective good faith effort to comply with the definition of an expert report set forth in
Section 74.351(r)(6). Appellees respond that the three reports must be considered together and that
collectively they fulfill the procedural requirements of Section 74.351. 
            In assessing the adequacy of an expert report necessary to sustain a medical malpractice suit,
the trial court must look only within the four corners of the report. Hutchinson v. Montemayor, 144
S.W.3d 614, 617 (Tex.App.--San Antonio 2004, no pet.). Although an expert report need not
include a full statement of the standard of care and how the standard of care was breached, it
must explain what care was expected but not given. Gallardo v. Ugarte, 145 S.W.3d 272, 278
(Tex.App.--El Paso 2004, pet. denied). An expert report must represent a good-faith effort to
provide a fair summary of the expert’s opinions. Ehrlich v. Miles, 144 S.W.3d 620, 626 (Tex.App.--Fort Worth 2004, pet. denied). To constitute a good-faith effort, the report must discuss the standard
of care, breach thereof, and causation with sufficient specificity to inform the defendant of the
conduct the plaintiff has called into question and to provide a basis for the trial court to conclude
that the claims have merit. Chandler v. Singh, 129 S.W.3d 184, 188 (Tex.App.--Texarkana 2004,
no pet. h.). 
            With regard to serving separate expert reports, Section 74.351(i) provides: 
Notwithstanding any other provision of this section, a claimant may satisfy any
requirement of this section for serving an expert report by serving reports of separate
experts regarding different physicians or health care providers or regarding different
issues arising from the conduct of a physician or health care provider, such as issues
of liability and causation. Nothing in this section shall be construed to mean that a
single expert must address all liability and causation issues with respect to all
physicians or health care providers or with respect to both liability and causation
issues for a physician or health care provider.
Tex.Civ.Prac.&Rem.Code Ann. § 74.351(i)(Vernon 2005).
            In Regent Care Center of Laredo, Ltd. Partnership v. Abrego, the plaintiff filed three expert
reports. No. 04-07-00320-CV, 2007 WL 3087211, at *1 (Tex.App.--San Antonio 2007, no pet.). 
The issue on appeal was whether the expert reports (read separately or together) established the
casual relationship between a breach of the standard of care and the death of the plaintiff for
purposes of a wrongful death claim. Id. at *5. The defendant hospital argued that the reports were
deficient as to causation on the part of the administrator of the nursing home facility because the
expert only addressed the hospital’s negligence and how its acts and omissions caused the
plaintiff’s death. Id. at *6. The court looked to Martin v. Abilene Regional Medical Center,
No. 11-04-00303-CV, 2006 WL 241509, *4 (Tex.App.--Eastland 2006, no pet.) for guidance. 
            In Martin, the hospital argued that the nursing expert’s report was deficient as to causation
because the expert only addressed the nursing standard of care and the breach of that standard while
the physician expert addressed only the negligence of the defendant physician and how that
negligence was a proximate cause of the plaintiff’s injuries. The court of appeals rejected the
hospital’s argument and read the reports of the nursing expert and the physician expert together since
causation--how the failure to prescribe medicine caused the injuries--applied to the conduct of both
the nurse and the physician who were allegedly at fault for the failure to prescribe. Id. at *4-5. “To
the extent that the trial court may have reviewed [the physician expert’s] report in isolation, the trial
court abused its discretion because Section 74.351(i) expressly provides that a claimant may satisfy
any requirement of the Act by providing expert reports of separate experts.” Id. at *4. Relying on 
Martin, the Abrego court concluded that the two expert reports, read together, addressed the
standards of care for the nursing home and the hospital, fulfilling the statute’s causation requirement. 
2007 WL 3087211, at *6.
            Based on the language in Section 74. 351(i) and the analysis in both Abrego and Martin, we
conclude that the three expert reports must be read together. We next consider whether the reports
combined provide a sufficient discussion of the standard of care, breach of the applicable standard,
and causation. Tex.Civ.Prac.&Rem.Code Ann. § 74.351(r)(6). 
Standard of Care and Breach
            An expert report need not marshal the plaintiff’s proof, but it must include the expert’s
opinions on all three statutory elements. Gray v. CHCA Bayshore L.P., 189 S.W.3d 855, 859
(Tex.App.--Houston [1st Dist.] 2006, no pet.). Although it is not sufficient for an expert simply to
state that he knows the standard of care and assert it was not met, a fair summary is something less
than a full statement of the applicable standard of care and how it was breached. Palacios, 46
S.W.3d at 880. A fair summary need only set out what care was expected but not given. Id.
            Dr. Koumjian’s report references the applicable standard of care and subsequent breach of
that standard: 
Instead of going ahead with the transfer, Mrs. Barnes’ physician should have been
immediately notified by the nurse and efforts made to stabilize Mrs. Barnes with
vasopressors (medications to raise the blood pressure), intra-venous fluids, and
oxygen. Since she had chest pain an EKG should have been immediately obtained. 
If notified of Mrs. Barnes’ condition her physician would have been able to meet the
standard of care, which was, attempt to stabilize her as above; make an immediate
effort to determine the cause of her hypotension (low blood pressure) and make an
immediate effort to locate the source of her bleeding. . . . Instead the nurses of
Providence Memorial Hospital and the ambulance personal [sic] decided to transfer
Mrs. Barnes to Sierra Medical Center.

Dr. Koumjian’s expert report is corroborated by the report submitted by Nurse Tyler, who opines that 
the nursing standard of care when a patient undergoes an angiogram is to monitor the patient looking
for evidence of bleeding. If there is a sign of blood loss, the standard of care would require the nurse
to notify a physician who would be responsive. While waiting for the responding physician, the
nurse may give supplemental oxygen if the patient is in extremis or put the patient in a
Trendelenburg position to increase blood flow. The standard of care also requires that vital signs
be taken and recorded at the time the patient leaves the nursing unit. Here, however, the medical
records indicate that the last vital signs were taken two hours before Barnes was transferred. Tyler’s
report faults Barnes’ nurse for:
•failing to call the physician once there was a significant change in the patient’s condition
and she destablilized; 

            •failing to provide supplemental oxygen while she was waiting for the physician; 
 
•allowing a patient who had not been stabilized to be moved to Sierra Medical Center; and 

            •failing to notify the nursing staff at Sierra of Barnes’ deteriorating condition. 
 
            We conclude that the trial court acted within its discretion in finding that the expert reports
adequately complied with the statutory requirements for articulating the standard of care and the
breach thereof. 
Causation
            An expert report must provide a fair summary of the expert’s opinions on the causal
relationship of a breach from a standard of care to the harm claimed, with enough specificity to allow
the trial court to conclude that the plaintiff’s claims have merit. Palacios, 46 S.W.3d at 878; see
Tex.Civ.Prac.&Rem.Code Ann. § 74.351(r)(6). Applying this standard, an expert report is
insufficient when it contains only a series of repetitious, conclusory statements regarding causation. 
See Jones v. King, 255 S.W.3d 156, 160 (Tex.App.--San Antonio 2008, pet. denied)(mem.
op.)(adding that an expert must “explain the basis of his statements to link the conclusions to the
facts”). As is true in other types of negligence cases, causation is established by proof that the
negligent act or omission was a substantial factor in bringing about the harm and without which the
harm would not have occurred. Costello v. Christus Santa Rosa Health Care Corp., 141 S.W.3d
245, 249 (Tex.App.--San Antonio 2004, no pet.). Mere reference to general concepts regarding
assessment, monitoring, and interventions are insufficient as a matter of law. Regent Health Care
Center of El Paso, L.P. v. Wallace, 271 S.W.3d 434, 441 (Tex.App.--El Paso 2008, no pet.h.). There
can be no analytical gap between a breach of the standard of care and the ultimate harm. Clark v.
HCA, Inc., 210 S.W.3d 1, 11 (Tex.App.--El Paso 2005, no pet.).
            We have reviewed the four corners of Dr. Koumjian’s report and disagree with Providence
that it is conclusory. The report supplies the requisite causal relationship between the breach--the
failure to notify Barnes’ physician--and Barnes’ death. As to causation, the report contains the
following information:
4. Instead the nurses of Providence Memorial Hospital and the ambulance personal
[sic] decided to transfer Mrs. Barnes to Sierra Medical Center. In my opinion,
Mrs. Barnes probably could have been stabilized at Providence if the nurse had
contacted her physician at 3:20 p.m. This opinion is based upon the fact that Mrs.
Barnes had not been hypotensive much more than an hour and her blood pressure
would probably respond to intravenous fluids and medications. It is also my opinion
that within reasonable medical probability the tear in Mrs. Barnes’ artery could have
been located and repaired and she would have survived the event with no significant
sequelae.

. . .
 
13. She expired on October 31, 2005 from complications of her hypotension in spite
of intensive care and the input and expertise of many specialists. In all reasonable
medical probability Mrs. Barnes fate was doomed shortly upon arrival at Sierra
Medical Center as she had been documented as having the signs and symptoms of
significant blood loss since 2:00 p.m. and had shown the signs and symptoms of
having had hypotension that had existed for more than 30 minutes as of 3:20 p.m.

. . .
 
19. I reviewed the entire medical records concerning Mrs. Barnes hospitalization at
Sierra Medical Center searching for other explanations of her death. In my opinion,
based on reasonable medical probability, Mrs. Barnes died from the complications
of shock.

. . .
 
22. Thus, in my opinion the transfer process resulted in a delay in the diagnosis and
treatment of Mrs. Barnes’ hypotension caused by bleeding from a torn femoral artery
and probably increased her blood loss. The delay in diagnosis and treatment caused
by the transfer exceeded two hours and in all probability caused irreversible damage
which led to multi-organ failure and then to death. 
             The two-fold purpose of an expert report is to inform the defendant of the specific conduct
the plaintiff has called into question, and to provide the trial court with a basis to determine whether
the plaintiff’s claims have merit. Patel v. Williams ex rel. Estate of Mitchell, 237 S.W.3d 901, 906
(Tex.App.--Houston [14th Dist.] 2007, no pet.h.). Pursuant to this standard, we conclude that
Dr. Koumjian’s report sufficiently addresses the element of causation, linking the alleged breaches
of the standard of care to Barnes’ subsequent death. Bearing in mind that expert reports are a
preliminary method to demonstrate that a plaintiff has a viable cause of action that is not frivolous
or without expert support, we hold the trial court acted within its discretion in concluding that the
expert report complied with the statute’s causation requirement. 
            Finding that the requirements of Section 74.351 are met by the reports of Dr. Koumjian and
Nurse Tyler, we need not address whether Dr. Contin’s autopsy report qualifies as an expert report
under Section 74.351. Accordingly, we overrule Points of Error One and Two. 
EXPERT QUALIFICATIONS
            In Points of Error Three through Six, Providence challenges the qualifications of the three
experts. 
License to Practice Medicine
            Before addressing whether Dr. Koumjian must be licensed in Texas in order to opine on
causation, we address the hospital’s argument that neither Dr. Koumjian’s report nor his
curriculum vitae indicate that he is licensed to practice medicine in any state. In support of this
argument, Providence directs us to Li v. Billingsley, No. 05-08-00436-CV, 2009 WL 242523, at *1
(Tex.App. --Dallas 2009, no pet. h.). There, the expert was a chiropractor who was licensed to
practice chiropractic, not to practice medicine. The court found that nothing in his report or
curriculum vitae suggested that he was licensed to practice medicine. Id. at 2. Here, the report and
curriculum vitae indicate that Dr. Koumjian is licensed to practice medicine in California. In his
report, Dr. Koumjian states that he is a board certified cardiovascular surgeon presently practicing
in San Diego, California. In his curriculum vitae, he lists his current position as a private
practitioner in cardiovascular and thoracic surgery in San Diego, California. We need not look
beyond the four corners of the report or curriculum vitae to determine his qualifications. Palacios,
46 S.W.3d at 878. 
Must the Experts be Licensed in Texas?
            In Point of Error Three, Providence argues that Dr. Koumjian is not qualified to opine on
causation. The crux of the argument is that a physician licensed in another state may opine as to the
applicable standard of care and any breaches thereof, but only a physician licensed in Texas may
opine as to causation. We recently addressed this very issue in Tenet Hospitals Limited, a Texas
Limited Partnership, d/b/a Providence Memorial Hospital v. Boada, 304 S.W.3d 528 (Tex.App.--El Paso 2009, pet. denied) and disagreed with the hospital’s statutory interpretation. We will not
revisit that holding here. We overrule Point of Error Three.
Dr. Contin’s Qualifications
            In Point of Error Four, Providence argues that Dr. Contin lacks the requisite qualifications
to opine on the applicable standard of care. Having found that the expert reports of Dr. Koumjian
and Nurse Tyler meet the requirements of Section 74.351,we need not address Dr. Contin’s
qualifications. We overrule Point of Error Four. 
Qualifications/ Standard of Care
            In Points of Error Five and Six, Providence argues that neither Dr. Koumjian nor Nurse Tyler
is qualified to opine on the applicable standard of care. 
Dr. Koumjian
            Providence argues that even though Dr. Koumjian is a board certified cardiovascular surgeon,
he does not claim to be knowledgeable or experienced on the standards of care applicable to
hospitals or nurses. It suggests that merely working as a surgeon in a hospital is not analogous to
experience in specialized nursing care or hospital policies and procedures. 
            Section 74.402(b) establishes that, in a suit involving a health care liability claim against a
health care provider, a person may qualify as an expert witness on the issue of whether the health
care provider departed from accepted standards of medical care only if the person:
(1) is practicing health care in a field of practice that involves the same type of care
or treatment as that delivered by the defendant health care provider, if the defendant
health care provider is an individual, at the time the testimony is given or was
practicing that type of health care at the time the claim arose;
 
(2) has knowledge of accepted standards of care for health care providers for the
diagnosis, care, or treatment of the illness, injury, or condition involved in the claim;
and
 
(3) is qualified on the basis of training or experience to offer an expert opinion
regarding those accepted standards of health care.

Tex.Civ.Prac.&Rem.Code Ann. § 74.402(b)(Vernon 2005).

            Section 74.402(b) makes it clear that different standards of care apply to physicians and
health care providers. See Simonson v. Keppard, 225 S.W.3d 868, 872 (Tex.App.--Dallas 2007, no
pet.). When a physician fails to state in his expert report that he has knowledge of the standard of
care applicable to the specific types of health care providers involved in the claim, or that he has ever
worked with or supervised the specific types of health care providers involved in the claim, the
physician is not qualified on the issue of whether the health care provider departed from the accepted
standards of care for health care providers. See id. at 872-74. But if the physician states he is
familiar with the standard of care for both nurses and physicians, and for the prevention and
treatment of the illness, injury, or condition involved in the claim, the physician is qualified on the
issue of whether the health care provider departed from the accepted standards of care for health care
providers. See San Jacinto Methodist Hosp. v. Bennett, 256 S.W.3d 806, 814 (Tex.App.--Houston
[14th Dist.] 2008, no pet.)(distinguishing Simonson ). Further, if a physician states he is familiar
with the standard of care and responsibilities and requirements for physician’s assistants, and he has
worked with, interacted with, and supervised physician’s assistants, the physician is qualified on the
issue of whether the health care provider departed from the accepted standards of care for health care
providers. See Cook v. Spears, 275 S.W.3d 577, 582-84 (Tex.App.--Dallas 2008, no pet.)
(distinguishing Simonson ). A physician is not required to state he is familiar with the core standards
for nurse practitioners or physician’s assistants. See id.
            In Simonson, the Dallas Court of Appeals concluded the trial court abused its discretion when
it denied a nurse practitioner’s motion to dismiss because “[n]owhere in his affidavit does [the
medical expert] state that he either has knowledge of the standard of care applicable to nurse
practitioners or that he has ever worked with or supervised nurse practitioners.” Simonson, 225
S.W.3d at 872. Such is not the case here. Dr. Koumjian’s report states his personal experience: “I
have been involved in the care of about 250 patients with problems similar to Mrs. Barnes.” He
continues:
10. I am a board certified cardiovascular surgeon presently practicing in San Diego,
California. As a cardiovascular surgeon I am frequently involved in the surgical
repair of injured blood vessels. I am also involved in the resuscitation and
stabilization of patients with vascular injuries, blood loss and hypotension. The repair
of injured blood vessels and stabilization of patients with hypotension was part of my
training as a cardiovascular surgeon. I remain current with the literature in the field
of cardiovascular surgery and attend medical education courses in the area of
cardiovascular surgery.

His curriculum vitae also indicates that he is currently “Chief of Surgery” at Sharp Grossmont
Hospital. His report coupled with his curriculum vitae adequately establish his qualifications to state
the standard of care applicable to Providence in relation to the health care provider’s care of Barnes. 
Not only has Dr. Koumjian demonstrated he has specific knowledge about the claim involved in this
case, his position as Chief of Surgery necessarily entails supervision of and interaction with the
requisite health care providers. Because Dr. Koumjian is qualified to opine on the applicable
standard of care, we overrule Point of Error Five. And even if we were to find that Dr. Koumjian’s
report and curriculum vitae do not sufficiently show his qualifications to opine on the applicable
standard of care, we may look to Nurse Tyler’s report to meet this requirement. Tex.Civ.Prac.&
Rem.Code Ann. § 74.351(i). 
Nurse Tyler
            As with Dr. Koumjian, Nurse Tyler must show she qualifies as an expert witness on the issue
of whether the health care provider departed from accepted standards of medical care by showing
that she:
(1) is practicing health care in a field of practice that involves the same type of care
or treatment as that delivered by the defendant health care provider, if the defendant
health care provider is an individual, at the time the testimony is given or was
practicing that type of health care at the time the claim arose;
 
(2) has knowledge of accepted standards of care for health care providers for the
diagnosis, care, or treatment of the illness, injury, or condition involved in the claim;
and
 
(3) is qualified on the basis of training or experience to offer an expert opinion
regarding those accepted standards of health care.

Tex.Civ.Prac.&Rem.Code Ann. § 74.402(b). The definition of “practicing health care” includes:
 
(1) training health care providers in the same field as the defendant health care
provider at an accredited educational institution; or 
 
(2) serving as a consulting health care provider and being licensed, certified, or
registered in the same field as the defendant health care provider. 

Tex.Civ.Prac.&Rem.Code Ann. § 74.402(a). In her report, Nurse Tyler states: 
 
My opinions in this case are based on my education, training and experience. 1 am
a registered nurse and have spent most of my nursing career evaluating nursing care.
In October 2005 I was practicing in the Office of the New Mexico Attorney General
as a medical care investigator. My position required that I be a licensed, registered
nurse. My job entailed reviewing complaints of substandard nursing care. As such,
I was obligated to be familiar with nursing standards of care. From July 2002 to May
2005 I practiced as a Surveyor/Reviewer for the State of New Mexico. In this
position I evaluated hospitals for quality of care and quality of nursing care. I was
also employed as an investigator with The Board of Nurse Examiners for the State
of Texas - January 1999-2001. This position required me to evaluate nursing conduct
to determine if the conduct met the nursing standard of care.
 
I keep current by reading several nursing journals. My training and years of
experience as a reviewer and as an investigator in the field of nursing, along with my
reading and continuous nursing education have made me an expert regarding nursing
standards of care. None of the standards of care I have described in this report would
be considered highly specialized or esoteric. Rather these standards or care are basic
standards of care taught in nursing school.

            Nurse Tyler’s resume also states she has been a registered nurse since 1990 and holds a
National Certification as an Investigator/Inspector. Based upon her report and resume, she clearly
possesses the requisite qualifications to opine on the applicable standard of care with regards to the
health care providers in this case. Nurse Tyler has demonstrated that she has the education,
certifications, and eight and a half years of experience in many areas of nursing. She meets the
definition of “practicing health care” because her investigator position is synonymous with a
consulting health care provider who licensed, certified, or registered in the same field as the
defendant health care provider. Tex.Civ.Prac.&Rem.Code Ann. § 74.402(a)(2). We perceive no
abuse of discretion in the trial court’s finding that Nurse Tyler was qualified to opine on the
applicable standard of care. We overrule Point of Error Six and affirm the judgment of the court
below.
 
July 28, 2010                                                                                                                                                   ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Antcliff, Judge
Antcliff, Judge, sitting by assignment