**Opinion issued August 13, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00361-CV

———————————

**TOMBALL TEXAS HOSPITAL COMPANY, LLC D/B/A TOMBALL REGIONAL MEDICAL CENTER, Appellant**

**V.**

**LA NETA BOBINGER, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-31139**

---

## DISSENTING OPINION

Because I believe that Bobinger's expert report does not adequately address

the causation element of her vicarious liability claim against the Hospital, and thus

did not provide a basis for the trial court to determine that her claim has merit, I respectfully dissent.

The record shows that, on May 11, 2015, Bobinger underwent a total hip replacement surgery by Dr. Blackwell. Blackwell and a radiologist then examined Bobinger's post-surgery radiographs and concluded that they showed "satisfactory alignment without fracture or loosening." Later on the day of surgery, and again during the first and second days after surgery, Bobinger underwent care and physical therapy by the Hospital's nurses and physical therapists, during which she experienced swelling and pain, and was unable to meet her therapy goals. Later on the second day after surgery, Bobinger was discharged from the Hospital. Bobinger does not allege, and the record does not reflect, that the nurses or physical therapists provided any treatment to her at any point thereafter.

During the week after her discharge from the hospital, Bobinger called Dr. Blackwell's office complaining of increasing pain, and Blackwell referred her to an emergency room on two separate occasions. On May 19, 2015, Bobinger was readmitted to the Hospital with a femoral fracture, and Blackwell performed a second hip surgery and a surgical repair of the fracture.

Three weeks after Bobinger's second hip surgery, on June 9, 2015, she was readmitted to the Hospital with an infection in her hip. She was then transferred to

2

a second hospital, St. Joseph Medical Center,[1] where she was diagnosed with a failed hip arthroplasty and a second femoral fracture. On June 14, 2015, Bobinger underwent a third hip surgery at St. Joseph, along with a second surgical repair of her first femoral fracture, a surgical repair of her second femoral fracture, and treatment of her hip infection.

## CAUSATION

The causation element of Bobinger's claim against the Hospital, based on alleged acts and omissions by its nurses and physical therapists, "requires that the expert explain 'how and why' the alleged negligence caused the injury in question." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224 (Tex. 2018). In other words, the expert "must explain the basis of his statements and link conclusions to specific facts." *Id*. "Proximate cause cannot be satisfied by mere conjecture, guess, or speculation." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008).

Although the expert need not prove the entire case or account for every known fact, the report must reflect a "good faith effort to explain, factually, how proximate cause is going to be proven." *Abshire*, 563 S.W.3d at 224. The expert's report must address both components of proximate cause: (1) cause-in-fact and

---

[1]     Not a party to this appeal.

(2) foreseeability. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017).

Under the first prong, "[f]or a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not have occurred." *Id.* It is not sufficient that one event occurred before the other. *See Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010) ("Care must be taken to avoid the *post hoc ergo propter hoc* fallacy, that is, finding an earlier event caused a later event merely because it occurred first.").

Under the second prong, a healthcare provider's breach is a foreseeable cause of the plaintiff's injury if a healthcare provider of ordinary intelligence would have anticipated the harm caused by the negligent act or omission. *Curnel v. Hous. Methodist Hosp.–Willowbrook*, 562 S.W.3d 553, 562 (Tex. App.—Houston [1st Dist.] 2018, no pet.). The foreseeability analysis requires looking at all the circumstances in existence at the time of the breach. *Stanfield v. Neubaum*, 494 S.W.3d 90, 103 (Tex. 2016).

In those cases in which a court has found an expert report adequate as to causation, i.e., both cause-in-fact and foreseeability, the expert linked the stated breach of the standard of care to *an injury caused by the breach*, i.e., paraplegia, blindness, death, loss of limb. *See, e.g.*, *Abshire*, 563 S.W.3d at 225 (holding expert

4

report adequate as to causation because expert explained how and why nurses' delay caused patient's paraplegia); *Fortner v. Hosp. of the Sw., LLP*, 399 S.W.3d 373, 385 (Tex. App.—Dallas 2013, no pet.) (holding expert reports adequate as to causation because expert explained how nurses' and therapists' delay caused patient's total blindness); *Columbia N. Hills Hosp. Subsidiary, L.P. v. Alvarez*, No. 02-10-00342-CV, 2011 WL 3211239, at *7 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.) (holding expert report adequate as to causation because it specifically set forth how nurses' breaches of standard of care "proximately caused [the patient's] death"); *Hayes v. Carroll*, 314 S.W.3d 494, 506–07 (Tex. App.—Austin 2010, no pet.) (holding expert report adequate as to causation because expert opined that nurse's breach of standard of care "caused the damage requiring amputation of [the patient's] leg").

Conversely, the Texas Supreme Court, in *Jelinek*, concluded that an expert report was inadequate as to the causation element because it offered "no more than a bare assertion" that a breach of the standard of care "resulted in increased pain and suffering and a prolonged hospital stay." 328 S.W.3d at 540. The report lacked any explanation of "how the breach *caused the injury*," i.e., the patient's death, and thus did not allow the trial court to determine whether the lawsuit had merit. *Id.* at 530, 540 (emphasis added).

Similarly, in *Jones v. King*, a court of appeals held that an expert report was inadequate as to the causation element because the expert did not "link his bare conclusions to the facts" and did not provide the trial court with sufficient information to determine whether the patient's claims had merit. 255 S.W.3d 156, 161 (Tex. App.—San Antonio 2008, pet. denied). There, the expert report stated that a 48-hour delay in diagnosing a patient's meningitis caused it to "worsen," caused "additional pain and suffering," and "resulted in numerous additional complications and injuries including decreased vision, diabetes insipidus, and pain." *Id.* at 159. The court explained:

> While [the expert] clearly state[d] [that the patient] suffered "extra" or "additional" pain and suffering due to the 48–hour delay in diagnosis, he fail[ed] to provide any baseline from which the trial court could conclude *the delay caused the results*.

*Id.* at 160 (emphasis added).

## ANALYSIS

Here, with respect to the causation element of Bobinger's claim against the Hospital, based on the alleged acts or omissions of its nurses and physical therapists, the expert report states:

> Orthopedic surgeons rely on nurses and physical therapists to inform them of post-operative difficulties their patients are having. In this case, it is reasonable to accept that had Dr. Blackwell been informed on May 12 and 13 that his patient was experiencing considerable pain with standard inpatient physical therapy for post-op hip replacement patients, could not meet her short term goal of stair climbing, and had significant swelling in the left hip, he *would have likely* ordered another

6

set of x-rays (AP and lateral) of the left hip prior to the patient's discharge on May 13, 2015. *Presumably*, this x-ray series would have revealed the same femoral fracture that was shown on the first post-op x-ray from 2 days before[,] which *presumably* would have caused Dr. Blackwell to cancel the discharge and *expeditiously* take the patient back to surgery to address the fracture, as he did after the patient was readmitted on May 19, with surgery on May 20, 2015.

The failure of the [Hospital's] orthopedic floor nurses and physical therapists to inform Dr. Blackwell of the unexpected results from physical therapy due to high levels of pain, *contributed to the inappropriate discharge of this patient and delay in receiving the additional surgical attention she needed to address the fracture until she returned to the hospital on May 19, 2015.* As this patient was scheduled to continue with physical therapy at home it is reasonable to expect that continued attempts at ambulation, stair stepping, toilet transfers, and heel/toe strikes *would have caused [Bobinger] significant pain in the left hip. In fact, Dr. Blackwell['s] orthopedic consult from May 20, 2015 indicates he was aware that after her discharge [Bobinger] had called his clinic complaining of increasing pain and that he had referred [her] to the emergency room on two separate occasions.*

(Emphasis added.)

Thus, in the report, the expert speculates that, had the nurses and physical therapists contacted Dr. Blackwell and informed him about the notes they recorded in Bobinger's medical record, Blackwell "would have likely" ordered another set of radiographs, which "presumably" would have revealed a fracture that Blackwell and a radiologist had concluded was not present on the previous set of radiographs, and that Blackwell "presumably" would have "expeditiously" taken Bobinger back to surgery. "Proximate cause cannot be satisfied by mere conjecture, guess, or speculation." *See Hogue*, 271 S.W.3d at 246. Notably, according to the expert

7

report, although Blackwell "was aware" during the week after Bobinger's discharge from the Hospital on May 13, 2015 that she was experiencing "increasing pain," he did not readmit her for surgery until six days later, on May 19, 2015.

Again, "[f]or a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a ***substantial factor*** in bringing about the harm, and ***absent the act or omission—i.e., but for the act or omission—the harm would not have occurred***." *See Zamarripa*, 526 S.W.3d at 460 (emphasis added). Nothing in the expert report identifies how the alleged delay by the Hospital's nurses and physical therapists during the 48-hour window immediately after Bobinger's first surgery was "a substantial factor in bringing about" Bobinger's complained-of orthopedic complications, i.e., her failed arthroplasty and need for two additional revision surgeries, her multiple fracture repairs, or the infection that followed her second surgery. *See id.*; *see also Abshire*, 563 S.W.3d at 224 (holding that causation element "requires that the expert explain 'how and why' the alleged negligence caused the injury in question").

As in *Jelinek* and *Jones*, Bobinger's expert report offers no more than a bare assertion that the alleged breaches contributed to a 48-hour delay in diagnosis, during which Bobinger suffered pain. *See Jelinek*, 328 S.W.3d at 540 (holding that expert report offered "no more than a bare assertion" that breach "resulted in increased pain and suffering and a prolonged hospital stay"); *Jones*, 255 S.W.3d at

8

160 ("While [the expert] clearly state[d] [that the patient] suffered 'extra' or 'additional' pain and suffering due to the 48–hour delay in diagnosis, he fail[ed] to provide any baseline from which the trial court could conclude the delay caused the results.").

As to the second prong, foreseeability, the expert report states simply that because Bobinger was scheduled to continue with physical therapy at home, it was "reasonable to expect" that such therapy "would have caused [her] significant pain." Bobinger acknowledges in her brief that the expert report "does not state that it should have been foreseeable to the physical therapist and floor nurses that [she] had a femoral fracture." Indeed, the expert report notes that Dr. Blackwell and a radiologist had, within the same 48-hour period, already concluded that there was not a fracture present. Similarly, nothing in the expert report states or explains how, under the circumstances in existence at the time of the alleged delay, nurses and physical therapists "of ordinary intelligence would have anticipated the danger," i.e., the subsequent orthopedic complications that Bobinger suffered. *See Curnel*, 562 S.W.3d at 562 (holding that "a health care provider's breach is a foreseeable cause of the plaintiff's injury if a health care provider of ordinary intelligence would have anticipated the danger caused by the negligent act or omission"); *Stanfield*, 494 S.W.3d at 103 (holding that foreseeability analysis requires looking at all circumstances in existence at time of breach).

9

I believe that the trial court erred in denying the Hospital's motion to dismiss Bobinger's claim against it because the expert report does not adequately address causation and thus does not provide a basis for the trial court to determine that Bobinger's claim has merit. *See Cornejo v. Hilgers*, 446 S.W.3d 113, 120 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (holding that trial court must grant motion to dismiss if report is not sufficiently specific to provide basis for trial court to conclude that claims have merit). Accordingly, I dissent. I would reverse the trial court's order denying the Hospital's motion to dismiss Bobinger's claim against it and render judgment dismissing her claim.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Radack, C.J., dissenting.