# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00753-CV

**Central Texas Spine Institute, LLP and William Peyton Taylor, M.D., Appellants**

**v.**

**Phyllis R. Brinkley, Individually and as Independent Executor of the
Estate of Robert E. Brinkley, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-08-002010, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## O P I N I O N

Appellee Phyllis R. Brinkley, Individually and as Independent Executor of the Estate of Robert E. Brinkley, filed suit against appellants Central Texas Spine Institute, LLP ("CTSI") and William Peyton Taylor, M.D., alleging direct and vicarious health care liability claims under chapter 74 of the civil practice and remedies code.[1] In support of these claims, Brinkley timely filed and served an expert report implicating only Taylor, to which the defendants raised no objections. Thereafter, Brinkley filed an amended petition specifying that the vicarious-liability claims against both defendants were based on the conduct of their employees or agents, "including, but not limited to," Randall Dryer, M.D. CTSI and Taylor moved to dismiss the vicarious-liability claims arising

---

[1] We have amended the caption in accordance with the Suggestion of Death filed in the trial court to reflect that Robert E. Brinkley is no longer a party. His estate is represented by his surviving wife, Phyllis.

from Dryer's conduct on the basis that Brinkley had failed to file and serve an expert report as to Dryer. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2010).

The trial court denied CTSI and Taylor's motion to dismiss by order dated April 8, 2010. In the same order, however, the trial court granted Brinkley a 30-day extension to cure any deficiencies in the expert report. CTSI and Taylor did not appeal the April 8 order. Instead, on September 3, 2010, CTSI and Taylor filed a "Second Motion to Dismiss" the same claims arising from Dryer's conduct, again asserting that the original expert report was "no report at all as to Dr. Dryer." After a hearing, the trial court determined that the defendants' second motion to dismiss was in fact a motion for reconsideration of the April 8 order and denied the motion, ruling that the April 8 order "remains in effect." CTSI and Taylor then filed this accelerated interlocutory appeal of the subsequent order. For the reasons that follow, we dismiss the appeal for want of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 2008, Brinkley filed her original petition, asserting direct and vicarious health care liability claims against CTSI and Taylor and alleging that these defendants "and their agents, ostensible agents, agents by estoppel and/or employees," committed medical negligence:

(a)  In failing to properly and timely monitor the condition of Plaintiff PHYLLIS R. BRINKLEY;

(b)  In failing to properly and timely diagnose the conditions of Plaintiff PHYLLIS R. BRINKLEY;

(c)  In failing to properly and timely treat her conditions; and

(d)  In failing to provide the medical and nursing care reasonably required in view of her conditions.

2

According to Brinkley's timely filed medical expert report, the alleged negligence occurred when Brinkley went to CTSI for treatment of her lower back pain. The report mentions that Dryer, an orthopedic spine surgeon, first examined Brinkley, noted that her condition was not surgical, and referred her to a pain management physician. Two days later, Brinkley was admitted to the hospital after her pain became more severe and she could no longer walk. She underwent an MRI, which Dryer reviewed, and was then referred to Taylor, who performed a laminotomy the following day. Although she was still complaining of pain and numbness, Brinkley was discharged to a rehabilitation facility four days after surgery. Taylor continued to monitor Brinkley over the next two months. Thereafter, Brinkley was determined to have severe and irreversible neurological deficits.

In his report, Brinkley's expert opined that Brinkley's injuries were likely the result of, or were exacerbated by, Taylor's decision to perform a laminotomy rather than a spinal fusion, the methods he employed during the surgical procedure, and delays in getting Brinkley into surgery. Although the report mentioned Dryer in the factual recitation, it made no attempt to evaluate whether Dryer's conduct fell below any professional medical standards; rather, the report made such an evaluation *only* as to Taylor.

Brinkley's medical expert report was timely filed and served in accordance with chapter 74, *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), and the defendants served no objections to its sufficiency, *see id.* Several months later, Brinkley filed her first amended petition, which asserted the same claims and theories of liability against CTSI and Taylor, but specifically identified Randall Dryer, M.D., as one of the "agents, ostensible agents, agents by estoppel and/or

3

employees" for whose conduct CTSI and Taylor were alleged to be vicariously liable. Brinkley did not name Dryer as a defendant in the suit. After being served with the amended petition, CTSI and Taylor moved to dismiss "all vicarious liability allegations" arising from the acts or omissions of Dryer on the basis that Brinkley had filed no expert report as to those claims. At the hearing on the motion to dismiss, Brinkley argued that, at most, the report was deficient rather than wholly absent because although the report failed to identify Dryer by name, his conduct for which the defendants were alleged to be vicariously liable was sufficiently implicated by the report. This was so, Brinkley argued, because the conduct at issue was the failure to diagnose and promptly treat an orthopedic surgical condition and, since Taylor and Dryer are both orthopedic surgeons, they would necessarily have operated under the same standards and circumstances of care, breach, and causation.

The trial court agreed with Brinkley and found that the expert report was merely deficient as to the vicarious-liability claims against CTSI and Taylor based on Dryer's conduct. By order dated April 8, 2010, the trial court denied the defendants' motion to dismiss and granted Brinkley a 30-day extension of time to cure the "deficiency." No appeal was taken from the April 8 order.

Brinkley filed and served an amended report on April 30, 2010. The amended report expressly addressed the standard of care applicable to Dryer, his alleged breach of that standard, and causation with respect to his acts and omissions. Again, the defendants filed no objections to the sufficiency of the amended report. Instead, on September 3, 2010, CTSI and Taylor filed a "Second Motion to Dismiss" again seeking dismissal of the vicarious-liability claims that were based on the acts of Dryer. The second motion re-urged the same arguments and cited many of the same

4

authorities as the first motion to dismiss; it did not challenge any element of Brinkley's amended expert report or otherwise assert that the amended report was insufficient. Rather, the second motion simply argued that the trial court "should not have granted the extension as [the expert]'s report was not deficient. Instead it was no report at all as to Dr. Dryer and under Chapter 74, the claims should have been dismissed."

Brinkley moved to strike CTSI and Taylor's second motion to dismiss on the basis that it was "an impermissible attempt to obtain a second bite at the apple," attacking a report that was no longer subject to dispute because it had been superseded by the amended report. After a hearing, the trial court found that the defendants' second motion to dismiss was actually a motion for reconsideration of the court's April 8, 2010 order. "[C]onsidering the motion as such," the trial court denied the request for reconsideration and concluded that its April 8 order "remains in effect." Its rulings were memorialized by a written order dated November 8, 2010.

CTSI and Taylor filed a notice of accelerated appeal of the trial court's November 8 order, purportedly under chapter 51 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a) (listing orders from which interlocutory appeal may be taken). On appeal, they complain that the trial court erred in rendering an order (the April 8 order) that denied their motion to dismiss and simultaneously granted an extension of time to cure any deficiencies in the expert report, which prevented them from seeking an interlocutory appeal of the denial of their motion to dismiss. In response, Brinkley has filed in this Court a motion to dismiss the appeal on the basis that the notice of appeal was untimely, as the order the defendants were actually appealing was the April 8 order, not the November 8 order. *See* Tex. R. App. P. 26.1(b) (requiring notice of

5

appeal to be filed within 20 days of judgment or order in accelerated appeal). According to Brinkley, CTSI and Taylor waived their right to interlocutory review by failing to appeal the April 8 order, because that was the order that "denie[d] all or part of the relief sought by a motion under Section 74.351(b)," *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9), while the November 8 order simply denied the defendants' motion for reconsideration of the prior order.

## STANDARD OF REVIEW

Generally, we review a trial court's order on a defendant's motion to dismiss a health care liability claim for an abuse of discretion. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). An abuse of discretion occurs when the trial court acts in an unreasonable or arbitrary manner, or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). But we must review de novo the question of whether this Court has jurisdiction over an appeal, because jurisdiction is a legal question. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *see also M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (appellate court is obligated to review issues affecting its jurisdiction).

## DISCUSSION

Responding to Brinkley's assertion that they could have challenged the trial court's denial of their motion to dismiss only by timely appealing the April 8 order, CTSI and Taylor argue that the April 8 order was not appealable because the denial of their motion to dismiss was coupled with the granting of a 30-day extension to cure any deficiencies in the expert report. *See* Tex. Civ.

6

Prac. & Rem. Code Ann. §§ 51.014(a)(9) (permitting interlocutory appeal from trial court order that "denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351"); 74.351(b) (providing that, on motion of affected physician or health care provider, trial court shall dismiss with prejudice claims not supported by medical expert report); *but see id.* § 74.351(c) (permitting trial court to grant one 30-day extension to claim in order to cure report if elements are found deficient). Reading these provisions together, CTSI and Taylor reason that no appeal could have been taken from the April 8 order because the trial court concluded, albeit erroneously, that the expert report was merely deficient, rather than absent, as to the claims arising from Dryer's alleged negligence.

The question of whether the report was wholly absent or merely deficient depends in part on how the vicarious-liability claim, or claims, are characterized. CTSI and Taylor have consistently asserted that Brinkley's original expert report was no report at all as to the "claims" based on Dryer's conduct. Their position is premised on the belief that allegations of vicarious liability related to the conduct of different individuals are distinct claims, and thus a health care liability claimant must serve an expert report containing all the requisite elements as to each individual for whose conduct the principal is alleged to be vicariously liable. *See University of Tex. Med. Branch v. Railsback*, 259 S.W.3d 860, 865-66 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (vicarious-liability claim against hospital should have been dismissed in part when claimant's expert report was "no report" as to one physician employee who was not mentioned in report, but not as to other doctor and various nurses whose conduct was adequately implicated). They argue that because Brinkley's first expert report failed to set forth the elements of standard of care, breach, and causation with

7

respect to Dryer, it was no report at all as to the vicarious-liability claims based on his conduct. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (c); *Ogletree v. Matthews*, 262 S.W.3d 316, 320 & n.2 (Tex. 2007) (providing that claimant may "fail to serve an expert report" subjecting his claims to dismissal if he serves report that attempts to satisfy requirements as to other defendants, but report does not implicate conduct of defendant in question). As such, it was not eligible for the grace period under section 74.351(c). *See Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008); *see also Samlowski v. Wooten*, 332 S.W.3d 404, 417-18 (Tex. 2011) (Wainwright, J., concurring) ("The legislative requirement that elements of the expert report be found deficient as a condition to considering an extension presumes that the elements at least be included in the report.").

If CTSI and Taylor are correct, however, that the allegations of vicarious liability arising from Dryer's conduct constitute a distinct claim for which *no report* was served, then they were entitled to interlocutory review of the trial court's April 8 order. The Texas Supreme Court and at least one other Texas court of appeals have held that the ban on interlocutory appeals in section 51.014(a)(9) does not apply if the plaintiff served "no report" within the permitted time period as to the defendant in question. *See Badiga v. Lopez*, 274 S.W.3d 681, 684 (Tex. 2009) ("The exception to section 51.014(a)(9) prohibiting appeal from an order granting an extension under section 74.351 does not apply when no expert report has been served."); *Rivenes v. Holden*, 257 S.W.3d 332, 338-40 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (op. on reh'g) (report that failed to address defendant physician was "no report at all" as to him, and therefore section 51.014(a)(9) did not prevent defendant from appealing denial of his motion to dismiss that was coupled with erroneous granting of extension of time). These courts determined that, despite the

8

plain language of section 51.014(a)(9), the ban does not apply to all orders in which the trial court granted an extension under section 74.351(c), because the trial court has no statutory authority to grant an extension to a plaintiff who served "no report" as opposed to a report that was merely deficient.

Therefore, if the vicarious-liability claim arising from Dryer's conduct is a separate claim in support of which no expert report was filed, then CTSI and Taylor were entitled under *Badiga* and *Rivenes* to take an interlocutory appeal of the April 8 order denying their motion to dismiss. They failed to do so. Instead, what they styled as a "second" motion to dismiss was in fact nothing more than a motion for reconsideration of the April 8 order denying their first motion; it raised no challenges to or arguments concerning the amended report. CTSI and Taylor point to no authority—and we have found none—supporting their contention that they could revive their right to an interlocutory appeal by filing a nearly identical second motion to dismiss after the trial court had already ruled against them on their first motion brought in response to the same report. Accordingly, under CTSI and Taylor's own characterization of the claims at issue, they waived their right to an interlocutory appeal challenging the trial court's denial of their first motion to dismiss when they failed to appeal the April 8 order. *See* Tex. R. App. P. 26.1(b), 28.1(a); *Lewis v. Funderburk*, 191 S.W.3d 756, 757 (Tex. App.—Waco 2006), *rev'd in part*, 253 S.W.3d 204 (Tex. 2008).[2]

---

[2] *Lewis v. Funderburk* is the only case we have found that involves a similar waiver issue. 191 S.W.3d 757 (Tex. App.—Waco 2006), *rev'd in part*, 253 S.W.3d 204 (Tex. 2008). In that case, the trial court denied the defendant's motion to dismiss, which alleged that what the plaintiff had filed (a "thank-you-for-your-referral" letter) was in essence no report, and granted a 30-day extension to cure. *Id.* at 758. After the plaintiff later filed a bona fide expert report, the physician responded

9

Brinkley, on the other hand, asserts that she has only ever asserted a *single* vicarious-liability claim and that her amended petition merely "expanded" her existing vicarious-liability theory to include the acts and omissions of Dryer. Under this theory, the report she initially filed in support of that claim was "some report" because it set forth the standards of care, breach, and causation with respect to the diagnosis and timing of the treatment of her condition, notwithstanding that it implicated only Taylor's conduct and made no attempt to implicate Dryer's.

---

with (1) a "Second Motion to Dismiss" alleging that the expert who prepared the report was not qualified and that his report was otherwise inadequate; (2) a "Motion for Reconsideration" of the prior ruling on his first dismissal motion, and (3) an "Objection to the Sufficiency of Plaintiff's Expert Report" under section 74.351(a). *Id.* The Waco Court of Appeals stressed that although the order denying the physician's first motion to dismiss was signed on October 29, 2004, he did not file his notice of appeal until April 12, 2005—well outside the 20-day deadline for filing a notice of appeal in an accelerated appeal. *Id.* at 760-61; *see* Tex. R. App. P. 26.3. The court of appeals therefore determined that the notice of appeal was untimely and that it lacked jurisdiction to address his issue challenging the trial court's denial of his *first* motion to dismiss (the second ground listed above). *Id.* at 761 (explaining that section 51.014(a)(9) confers no jurisdiction on court to review order denying motion for reconsideration of order denying relief under section 74.351(b)). The court then went to on determine that the physician's remaining challenges (the first and third grounds) concerned the qualifications of the expert and the adequacy of the bona fide report. The court held that those were issues for which a defendant has no right of interlocutory appeal and thus it had no jurisdiction to review the trial court's rejection of those grounds. *Id.*

On further review, the Texas Supreme Court held that challenges to the adequacy of an amended expert report could be raised on interlocutory appeal. *See* 253 S.W.3d at 206 (noting split of authority among courts of appeals and agreeing with majority of courts that interlocutory review is proper). Accordingly, the supreme court held that the court of appeals had erred in concluding that it lacked jurisdiction to review the denial of the second motion to dismiss to the extent that motion had raised the alleged inadequacy of the bona fide or "second" expert report. *Id.* at 208. But the supreme court did not address, and therefore left intact, the court of appeals' dismissal of the attempted appeal from the challenges to the physician's first motion to dismiss, noting only that "'[Dr.] Lewis has made it abundantly clear that he is not appealing the trial court's [initial] order (no matter how vehemently he disagrees with it),' but instead is only appealing the order denying his second motion to dismiss"—i.e., challenges to the second expert report. *Id.*

10

Thus, as the trial court apparently found, the report's failure to address the required elements with sufficient specificity regarding Dryer may have made the report deficient, but not wholly absent.

If Brinkley is correct in her characterization of the single vicarious-liability claim, then she would also be correct in asserting that section 51.014(a)(9) barred CTSI and Taylor from seeking interlocutory review of the April 8 order because the trial court simultaneously granted Brinkley leave to cure the deficiency in her expert report. *See Ogletree*, 262 S.W.3d at 320-21. In that case, CTSI and Taylor were not "deprived" of their right to interlocutory appeal; by the statute's design, they had none. *See id.* at 321 (noting that result would be "illogical and wasteful" if defendant were permitted to immediately—and prematurely—appeal issue of report's sufficiency while any deficiencies were presumably being cured at trial court level). It would be just as illogical to suggest that, once an extension of time to cure has been granted, the statute permits a defendant to appeal the sufficiency of the *original* report that has been superceded by an amended report—yet this is arguably what CTSI and Taylor have attempted to do here. Under Brinkley's characterization of the claims at issue, *Ogletree* would dictate that this Court lacks jurisdiction over CTSI and Taylor's appeal, because once "a report that implicated [the conduct for which they are alleged to be vicariously liable] was served and the trial court granted an extension," the actions denying the motion to dismiss and granting an extension became "inseparable." *See id.*

Therefore, under either characterization of the vicarious-liability claims arising from Dryer's conduct, this Court lacks jurisdiction to review the merits of the motion to dismiss. Accordingly, we must dismiss the appeal for want of jurisdiction.

11

**CONCLUSION**

We dismiss the appeal for want of jurisdiction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Dismissed for Want of Jurisdiction

Filed:   June 8, 2011